**No. 25-2259**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

DANNY HONEYCUTT, as personal representative for the Estate of Nathan Thomas Honeycutt,

*Plaintiff-Appellant*,

v.

CLACKAMAS COUNTY SHERIFF'S OFFICE ET AL.,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Oregon
No. 3:23-cv-00953-SB
Hon. Stacie Beckerman, United State Magistrate Judge

---

# APPELLANT'S OPENING BRIEF

---

Kevin T. Lafky
Lafky & Lafky
*429 Court St NE, Salem, OR 97301*
*(503) 585-2450*
*klafky@lafky.com*
*Attorneys for Appellant Honeycutt*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 2

STATUTORY AUTHORITIES .......... 3

ISSUES PRESENTED .......... 3

STATEMENT OF THE CASE .......... 4

SUMMARY OF THE ARGUMENT .......... 8

STANDARD OF REVIEW .......... 9

ARGUMENT .......... 10

I. The District Court erred by accepting as credible the deputies' accounts not corroborated by video .......... 10

II. Both Bento and Roach used excessive force on an immobilized Mr. Honeycutt. .......... 13

A. Deputy Bento's use of deadly force was excessive to what an objectively reasonable officer would need to use. .......... 15

B. *Strickland* is distinguishable and should not have been relied on by the District Court .......... 17

C. There are genuine issues of material fact as to whether Deputy Roach's continued striking Mr. Honeycutt after other deputies arrive is reasonable .......... 20

III. Shooting an immobilized person is a well-known violation of constitutional rights such that qualified immunity does not attach..... 21

IV. All state law claims should be reinstated because summary judgment was improperly granted. ....................................................................23

CONCLUSION .........................................................................................................23

STATEMENT OF RELATED CASES……………………………………………...24

CERTIFICATE OF COMPLIANCE………………………………………………...25

CERTIFICATE OF SERVICE……………………………………………………26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)................ 10, 11, 12 ,21

*Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007)........................ 12, 17, 22

*Estate of Strickland v. Nevada County*, 69 F.4th 614 (9th Cir. 2023)............. 17, 19

*Estate v. City of Martinsburg*, 961 F.3d 661 (4th Cir. 2020) .................................22

*Gelboim v. Bank of Am. Corp.*, 574 U.S. 405 (2015) ...............................................2

*Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014)......................................9

*Graham v. Connor*, 490 U.S. 386 (1989) ...................................................... passim

*Longoria ex rel. All Statutory Beneficiaries Longoria v. Pinal County*, 873 F.3d 699 (9th Cir. 2017) ......................................................................... passim

*Rice v. Morehouse*, 989 F.3d 1112 (9th Cir. 2021) .................................. 11, 13, 14

*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1992) ............................................ 9, 12, 18

*Seidner v. de Vries*, 39 F.4th 591 (9th Cir. 2022).......................................................9

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) .................................... 14, 22

*Tatum v. City and County of San Fransisco*, 441 F.3d 1090 (9th Cir. 2006)..........14

*Wate v. Kubler*, 839 F.3d 1012 (11th Cir. 2016) ....................................................22

*Williamson v. City of National City*, 23 F.4th 1146 (9th Cir. 2022).......................13

*Young v. Cnty of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011) ...............................20

**Statutes**

28 U.S.C. §1291 .........................................................................................................2

42 U.S.C. §1983 .........................................................................................................3

ORS 813.010 ............................................................................................................15

**Rules**

Federal Rule of Appellate Procedure 4(1)(A)........................................................3

## INTRODUCTION

Nathan Honeycutt ("Mr. Honeycutt") was driving his pickup with the tailgate down in the early morning hours of September 27, 2021. A Clackamas County Sheriff's deputy, Deputy Sanders ("Sanders") saw his vehicle and, after following Mr. Honeycutt, became suspicious that Mr. Honeycutt was driving under the influence of intoxicants. Sanders attempted to initiate a traffic stop and Mr. Honeycutt made a fateful decision to try to get away.

After a police pursuit ended with Deputy Roach ("Roach") executing a Pursuit Intervention Technique ("PIT") against Mr. Honeycutt's truck, Mr. Honeycutt tried to get away on foot. He was tackled to the ground and quickly had three deputies surround him, with Roach repeatedly punching him, and pinned him face first in the ground. While Mr. Honeycutt continued to struggle, his struggles were ineffective. However, Deputy Bento ("Bento") stated Mr. Honeycutt had a gun, drew his service weapon and fired at Mr. Honeycutt three times, killing him.

This is a case about excessive deadly force, used by deputies to effect an arrest. Whether excessive force was used against Mr. Honeycutt is determined by evaluating the three factors provided in *Graham v. Connor*, 490 U.S. 386 (1989). The first factor is the nature of the crime Mr. Honeycutt was suspected of committing. *Graham*, 490 U.S. at 396. The second factor, and the most important

one to this Court, is whether any of the deputies were under immediate threat. *Id.* The third factor is whether Mr. Honeycutt was resisting. *Id.*

The District Court, based on the deputies' deposition testimony, determined that there were no genuine issues of material fact and granted summary judgment finding no excessive force. However, the video evidence provided during this case does not back up the deputies' deposition testimony, creating significant issues as to whether the deputies were under immediate threat or not.

Further the video evidence shows that Bento was not under immediate threat when he killed Mr. Honeycutt. Thus, his use of force was excessive. Additionally, the shooting of an immobilized suspect is by its very nature excessive and the deputies should have been aware of that.

Appellant asks this Court to reverse the District Court.

## JURISDICTIONAL STATEMENT

This court has jurisdiction over this appeal under 28 U.S.C. §1291. This appeal is from the District Court's granting of summary judgement to Defendants-Appellees. ER-4-58. A grant of summary judgment is a final order for purposes of 28 U.S.C. §1291 because it is the District Court "disassociate[ing] itself from a case." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015) (internal quotations and citations omitted).

The District Court had jurisdiction under 42 U.S.C. §1983. The District Court entered summary judgment on March 10, 2025. The Plaintiff-Appellant timely appealed the District Court's order on April 3, 2025 pursuant to Federal Rule of Appellate Procedure 4(1)(A). ER-78.

## STATUTORY AUTHORITIES

All relevant statutory, constitutional and regulatory authorities appear in the Addendum to this brief.

## ISSUES PRESENTED

1. The District Court erred in not properly reviewing the facts in the light most favorable to Mr. Honeycutt by accepting as true deposition testimony from the deputies that was not supported by video evidence.
2. The District Court erred because it ignored genuine issues of material fact as to whether Bento and Roach had a reasonable fear for their safety.
3. The District Court erred in finding no excessive force was applied when Bento shot Mr. Honeycutt despite three officers immobilizing and controlling Mr. Honeycutt rendering Mr. Honeycutt's resistance ineffective.

4. The District Court erred when the District Court did not apply the clearly established rule that shooting immobilized suspects is excessive force to overcome the officers' claims of qualified immunity.

## STATEMENT OF THE CASE

The facts of this case are presented in the light most favorable to Mr. Honeycutt, the non-moving party.

Nine days before the events on September 18, 2021. Clackamas County Sheriff Brandenburg had issued a new policy that stated that deputies would engage in vehicle pursuits "only when there is a reasonable suspicion to believe the suspect committed a felony person crime or where the suspect's driving conduct, prior to the initiation of a stop, displays a willful disregard for the safety of others…." ER-59. In the early morning hours of September 27, 2021, Sanders spotted Mr. Honeycutt driving a white pick-up truck with the tailgate down, obscuring the license plate. ER-62-63. When Sanders pursued Mr. Honeycutt, Mr. Honeycutt pulled off the road and Sanders drove past him. ER-63. Mr. Honeycutt executed a legal turn and drove away from the officer. ER-6. Sanders followed, and saw that Mr. Honeycutt failed to maintain his lane and was exceeding the speed limit by approximately 15 miles per hour. ER-64. Sanders attempted to initiate a traffic stop with Mr. Honeycutt, but Mr. Honeycutt refused to pull over.

ER-65. Sanders attempted to pursue but then terminated the pursuit per the Sheriff's new policy. ER-65. Sanders radioed dispatch to alert them to Mr. Honeycutt and his vehicle. ER-65-66.

As Sanders continued to follow Mr. Honeycutt, he let the other deputies coming into the area know that Mr. Honeycutt had turned up Scouters Mountain Road. ER-66. Throughout this entire encounter, there were no other cars present on the roads. *See* ER-69-71.

After Mr. Honeycutt drove up Scouters Mountain road, Sanders stopped his car, and asked Deputy Tharp ("Tharp"), the first to arrive in the area, to follow Mr. Honeycutt up Scouters Mountain Road knowing that road was a dead end. ER-67. Sanders then parked his car and set up a spike strip with the intent to spike Mr. Honeycutt's tires. ER-67 and ER 69[ Sanders Car Video 2:50-3:40]. Mr. Honeycutt came back down Scouter Mountain Road and hit the spike strip laid down by Sanders. ER-69 [Sanders Car Video 5:35]. Sanders reported a "good spike." ER-69 [Sanders Car Video 5:36]

At this point, Roach arrived at the scene, saw Mr. Honeycutt driving back down Scouters Mountain Road and pursued him. ER-70 [Roach Car Video 0:25]. Roach followed Mr. Honeycutt and saw Mr. Honeycutt exceed the speed limit several times and drive on the wrong side of the road. ER-70 [Roach Car Video

1:08]. Roach then initiated a successful PIT maneuver bringing Mr. Honeycutt's vehicle to a stop as it lost control and slammed into a curb. ER-70 [Roach Car Video 1:44-1:53].

Once Mr. Honeycutt's vehicle was stopped, he exited his truck and started running away. ER-70[Roach Car Video 1:55]. Roach jumped out of his car and pursued Mr. Honeycutt. ER-70 [Roach Car Video 1:57]. Roach tackled Mr. Honeycutt to the ground. ER-70 and ER71 [Roach car Video 1:58; Tharp Rear Car Video 1:14]. Mr. Honeycutt and Roach rolled on the ground with Roach ending on top of Mr. Honeycutt. ER-71 [Tharp Rear Car Video 1:14]. Roach proceeded to then repeatedly punch Mr. Honeycutt's back while shouting orders. ER-71[Tharp Rear Car Video 1:15-16]. Shortly after this, Tharp reached the scene, jumped out of his car and proceeded to get on top of Mr. Honeycutt's left side. ER-71 [Tharp Rear Car Video 1:15-1:16].

Bento arrived and got out of his car a second after both Roach and Tharp were already on top of Mr. Honeycutt. ER-71[Tharp Rear Car Video 1:18]. Bento proceeded to also get on top of Mr. Honeycutt's right side. ER-71 [Tharp Rear Car Video 1:19]. All three deputies remained on top of Mr. Honeycutt throughout the rest of the encounter. ER-71 [Tharp Rear Car Video 1:14-1:38]. Mr. Honeycutt, even though he continued to resist, never once got off the ground or otherwise

removed the deputies from on top of him. ER-71 [Tharp Rear Car Video 1:14-1:38]. The only time the video shows Mr. Honeycutt getting off of the ground is when Roach and Tharp forcibly lift him up as they work to get his arm behind him to place handcuffs on him. ER-71 [Tharp Rear Car Video 1:24].

Shortly after all three deputies are on top of Mr. Honeycutt, shouting conflicting commands, one of the Deputies is heard to shout "He's got a gun," followed shortly by "Drop the fucking gun," ER-71[Tharp Rear Car Video 1:26, 1:29]. Immediately after that, the video picks up Mr. Honeycutt clearly stating "okay."[1] ER-71 [Tharp Rear Car Video 1:29]. Two seconds after that, Bento pulled out his gun and shot Mr. Honeycutt three times, killing him. ER-71 [Tharp Rear Car Video 1:31]. After Mr. Honeycutt was killed, there was a gun found at the scene. ER-72.

Throughout the time that Bento engaged with Mr. Honeycutt on the ground, the video shows him in a vertical position. ER-71 [Tharp Rear Car Video 1:21-1:32]. The video does not show him ducking, evading, or otherwise reacting physically to the announcement that Mr. Honeycutt had a gun. ER-71 [Tharp Rear

---

[1] The District Court states that it could not hear "Don't shoot." However, Mr. Honeycutt clearly states "okay" and Plaintiff maintains that the video, albeit unclearly, picks up Mr. Honeycutt stating "don't shoot" or otherwise verbally complying with the deputies' commands. ER-XX [Tharp Rear Car Video 1:30]

Car Video 1:26, 1:29]. In fact, Bento is shown in the video toward the end remaining in control and in an upright position the whole time. ER-71[Tharp Rear Car Video 1:29-1:31]. He did not use both hands to secure Mr. Honeycutt and instead kept one hand on his service weapon without drawing it. ER-71 [Tharp Rear Car Video 1:29-1:31].

Mr. Honeycutt's personal representative, Daniel Honeycutt, sued the Clackamas County Sheriff's office, Sanders, Tharp, Roach, and Bento after the death of his son for violation of Mr. Honeycutt's constitutional rights under the Fourth, Eighth, and Fourteenth amendments. ER 4. There, after discovery, Defendants moved for summary judgment on all claims against the individual deputies and the Sheriff's Office. ER-5. Defendants also moved for summary judgment on Plaintiff's state law claims. ER-5. The District Court granted Defendant's motion for summary judgment and this appeal timely followed.

## SUMMARY OF THE ARGUMENT

Excessive force cases are fact intensive and this case is no different. The District Court erred when it ignored genuine issues of material fact. The District Court determined that the deputies' deposition testimony about their belief in the immediate threat to themselves was true and credible. The District Court should not have made that credibility determination, saving that for the jury.

The deputies used excessive force on Mr. Honeycutt when they had him pinned to the ground and unable to move or free himself. Even though Mr. Honeycutt had a gun, there was no immediate threat to the deputies as shown in the video. This most important *Graham* factor weighs against the deputies' use of deadly force and thus their force was excessive. Further, this violation of Mr. Honeycutt's rights was clearly established because they killed him while he was immobilized and any resistance was completely ineffectual. The deputies should not be granted qualified immunity. Because summary judgment was improper, then all state law claims should continue.

## STANDARD OF REVIEW

This Court reviews a District Court's grant of summary judgment de novo. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014). This Court has also recognized that excessive force cases are fact intensive and summary judgment should be granted sparingly. *Seidner v. de Vries*, 39 F.4th 591, 601 (9th Cir. 2022). This Court also recognizes that summary judgment can be even more problematic in deadly force cases because "the officer defendant is often the only surviving eyewitness." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1992). Courts must not "simply accept what may be a self-serving account by the police officer." *Id*.

## ARGUMENT

### I. THE DISTRICT COURT ERRED BY ACCEPTING AS CREDIBLE THE DEPUTIES ACCOUNTS NOT CORROBORATED BY VIDEO

Summary judgment is only appropriate when all the facts, taken in the light most favorable to the non-moving party, shows there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court's role at the summary judgment stage is not to hold a trial on affidavits and depositions. *Id.*

However, that is exactly what the District Court did in this case. The District Court even acknowledges that it is holding a trial on depositions early in its analysis. ER-13-14 [District Court opinion footnote 8]. The District Court describes some of what occurs on the video, but then immediately moves to accepting as fact the deputies' deposition testimony. ER-13-14 [District Court opinion footnote 8].

The problem with accepting as true the deputies' statements is that they are not corroborated by the video. Bento claims that Mr. Honeycutt was able to voluntarily roll onto his back. ER-76. The only movement the video shows Mr. Honeycutt making is when he is forcibly lifted to his side by Tharp and Roach trying to secure his arm. ER-71[Tharp Rear Car Video 1:24]. Bento states that he was not able to successfully control the hand with the gun. ER-75. Yet the video

shows him on top of Mr. Honeycutt the entire time and not struggling to gain control over an “out-of-control” arm. ER71 [Tharp Rear Car Video 1:26-1:31].

Bento even contradicts himself in his testimony. He states that he did not have control of the hand with the gun. ER-75. Then he states he was able to control the arm and move it away from him. ER-76. The video does not corroborate any of these statements. ER-71 [Tharp Rear Car Video 1:26-1:31]. The credibility of these statements must be made by a jury and not based on a deposition. *Anderson*, 477 U.S. 242, 255.

The nature of the threat that the deputies faced, is not an incidental fact to this case. It is a material fact. It is a fact that potentially decides the case. *See Anderson*, 477 U.S. at 248 (“Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.”). As discussed below, immediate threat is one of the central factors to an excessive force analysis. *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (“Among these considerations, the 'most important' is the second factor—whether the suspect posed an immediate threat to others.”). There is a genuine issue of fact regarding the immediate threat to the deputies. This is true where, as here, the video evidence does not support and in fact contradict the deputies’ accounts. *See Id.* (“We do not credit a party's version of events that the record,

such as an unchallenged video recording of the incident, quite clearly contradicts.") (internal quotations and citations omitted).

With the video evidence, a jury can reasonably conclude that the deputies used excessive force in trying to arrest Mr. Honeycutt. A jury can weigh the credibility of the deputies with the deputies in person and before them, rather than on written deposition testimony. *Anderson*, 477 U.S. 242, 255. Deciding this case on deposition testimony given months after the incident is not the same as "examin[ing] all the evidence in the record, such as … contemporaneous statements by the officer." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1992).

This case exemplifies why summary judgment should be granted sparingly in excessive force cases, according to this Court. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054-55 (9th Cir. 2007). ("[W]e have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.") (internal quotations and citations omitted). These cases are fact intensive and a trier of fact should be able to make credibility decisions. *Id.* This Court has also recognized that when the excessive force is deadly then summary judgment becomes even more problematic. *Scott*, 39 F.3d at 915. Summary judgment in this case is improper and the District Court erred in granting it.

## II. BOTH BENTO AND ROACH USED EXCESSIVE FORCE ON AN IMMOBILIZED MR. HONEYCUTT.[2]

The use of excessive force is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). A deputy has used excessive force when their actions are not objectively reasonable in light of the circumstances confronting them. *Williamson v. City of National City*, 23 F.4th 1146, 1151 (9th Cir. 2022). Courts use a three part inquiry as the framework to evaluate reasonableness. *Id*. The inquiry first looks at the nature of the crime the individual is suspected of committing. *Graham*, 490 U.S. at 396. The second factor is whether the deputy faced an immediate threat to his own or other's safety, and the third factor is whether the individual is resisting attempts to arrest the individual. *Id*. Courts acknowledge that officers can be involved in rapidly evolving situations and should not sit and rule from hindsight. *Williamson*, 23 F.4th at 1151. Yet, courts must also look to the totality of circumstances that confront a deputy at the time to determine if the force was excessive. *Rice*, 989 F.3d at 1121.

---

[2] Appellant accepts the District Court's ruling that Deputy Sanders and Deputy Tharp did not use excessive force on Mr. Honeycutt.

In this case, the first factor, the crime that Mr. Honeycutt was accused of committing is a traffic violation. Even after he fled, he was not suspected of committing a violent or grievous crime. This factor weighs against the use of deadly or even intermediate force by Bento and Roach. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). The third factor weighs against Mr. Honeycutt. *See Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1096 (9th Cir. 2006) (use of force was reasonable when suspect was behaving erratically and resisting arrest). Mr. Honeycutt, as shown on the videos, fled from police after his vehicle was stopped. After he was tackled the video shows the deputies in control, but struggling to get restraints on him. This factor admittedly weighs against Mr. Honeycutt's claim of excessive force. *Id*.

The central issue for this case is whether the deputies' safety was immediately threatened by Mr. Honeycutt. *Rice*, 989 F.3d at 1121. The District Court erred when it determined that the only reasonable conclusion was that the deputies were immediately threatened justifying the use of deadly force. ER-25-26. The deputies were not under immediate threat and their use of force was objectively unreasonable.

### A. Deputy Bento's use of deadly force was excessive to what an objectively reasonable officer would need to use.

The three Graham factors reviewed in the totality of the circumstances show that Bento's use of deadly force was not as a matter of law reasonable and eligible for summary judgment. *Graham*, 490 U.S. at 396. The first Graham factor, the nature of the crime that Mr. Honeycutt was accused of committing was minor. At the time of his death, he was being pursued for a possible driving offense. This is not a violent person crime nor a major person crime. Under Oregon law, the worst level of driving under the influence of intoxicants (or similar driving charge) for a first-time offense is a Class A misdemeanor. ORS 813.010(4). This factor, which would have been known to Deputy Bento weighs in favor of finding Deputy Bento's use of deadly force to be excessive.

The third *Graham* factor of resistance on the part of Mr. Honeycutt weighs in favor of finding Deputy Bento's use of deadly force to not be excessive. *Graham*, 490 U.S. at 396. The totality of circumstances, though, show that Bento approached a scene with Mr. Honeycutt down face first on the ground with two other deputies already on top of him and controlling the situation. He appears to continue to resist even though it is ineffective and he is effectively immobilized. ER-71 [Tharp rear camera 1:20-1:31]. It is so ineffective that the only time Mr.

Honeycutt raises from the ground is when the other two deputies pull him up, not by his own free will. ER-71[Tharp rear camera video 1:24.]

The central factor, and indeed the most important, is whether there was an immediate threat to Bento or the other deputies. *Longoria ex rel. All Statutory Beneficiaries Longoria v. Pinal County*, 873 F.3d 699, 705 (9th Cir. 2017) (The "most important" factor is whether Longoria posed an *immediate* threat.") (emphasis in original, internal quotations and citations omitted). There was no immediate threat such that an objectively reasonable officer would use deadly force. *Id.*

*Longoria* is instructive. In that case, this Court found that 1) the car chase had ended; 2) Longoria was surrounded by police; and 3) Longoria had already been hit with several non-lethal rounds. *Longoria*, 873 F.3d at 705. The factual situation is very similar to what confronted Deputy Bento. Mr. Honeycutt's vehicle had been stopped by the successful PIT maneuver by Roach. ER-70 [Roach dash car video 1:45-1:53]. Mr. Honeycutt had been tackled by Roach and had both Roach and Tharp on top of him. ER-71 [Tharp rear video 1:16-1:21]. There was no *immediate* threat to Bento or others. Even though Mr. Honeycutt had a gun, the video does not show it was pointed at Bento or anyone else. ER-71 [Tharp rear video 1:21-1:31]. As a matter of law, shooting an immobilized individual is

unreasonable. *Davis*, 478 F.3d at 1052 (officer who continued to punch victim who was prone on the ground with the officer on top of him was clearly violating constitutional rights).

Even if this Court does not find Bento's actions unreasonable, this case is fact intensive and shows why summary judgment should be used sparingly. *Davis*, 478 F.3d at 1054-55. The video evidence "raises material questions of fact about the reasonableness of [Deputy Bento's] actions and the credibility of his post-hoc justification of his conduct." *Longoria*, 873 F.3d at 706.

The video evidence does not discredit Honeycutt's version of the deadly encounter. The video confirms that Mr. Honeycutt was face down on the ground with three deputies on top of him. ER-71 [Tharp rear car video 1:21-1:31]. The deputies were never dislodged from their positions. *Id.* They were in control of Mr. Honeycutt the whole time, rendering Mr. Honeycutt's resistance ineffective. *Id.* A reasonable jury could conclude from these facts that even though a gun was present, the deputies were not in immediate threat and thus the deadly force used was excessive. *See Longoria*, 873 F.3d 699.

### B. ***Strickland*** **is distinguishable and should not have been relied on by the District Court**

The District Court erroneously analogizes this case to *Strickland*. *Estate of Strickland v. Nevada County*, 69 F.4th 614 (9th Cir. 2023). The District Court

concludes that the danger that Mr. Honeycutt presented was even worse than the situation in Strickland. The District Court points to the fact that Mr. Honeycutt had a real gun and resisted officers as to why in this case the threat to the officers is more severe than in Strickland. ER-30. Further the District Court notes that Appellant did not produce any evidence contrary to the deputies' statements about the threat they faced. ER-31-32 ("Plaintiff does not argue or present evidence that Honeycutt dropped the gun.") Because there was no countervailing evidence, then, according to the District Court, the deputies statements must be true and the threat was real and the force applied reasonable. ER-55.

Appellant has already addressed the District Court's error in the facts and the standard applied at summary judgment. As stated above, the District Court did not take the facts in the light most favorable to Mr. Honeycutt. In its analysis, the District Court compounds the error by stating that Appellant was unable to produce evidence to contradict the deputies' testimony. As this Court has said "the judge must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story-the person shot dead-is unable to testify. *Scott*, 39 F.3d at 915. Appellant cannot produce additional evidence of how Mr. Honeycutt held the gun or whether he pointed the gun at police, because Mr. Honeycutt is

dead. But the video evidence does not show a threat with the gun, and shooting Mr. Honeycutt three times was excessive.

In addition, *Strickland* is distinguishable in several very important ways. First, in *Strickland* the suspect was free to walk around and in fact was reported to be walking down the street. *Strickland*, 69 F.4th at 618. Also Mr. Strickland had complete control to move as he desired. *Id*. Finally, Mr. Strickland repeatedly pointed his gun at the police. *Id*.

That is not the case here. Here, Mr. Honeycutt had three deputies on top of him. ER-71 [Tharp Rear Car Video 1:21-1:32]. Mr. Honeycutt was not free to do anything he could. ER-71[Tharp Rear Car Video 1:21-1:32]. Mr. Honeycutt was immobilized by the deputies. ER-71. Contrary to *Strickland,* the deputies here did not have to wait to determine if the gun was real and if it was pointed at them. They were in control of the situation. They were not facing a person freely able to move with a gun already out and drawn. *Strickland*, 69 F.4th at 618. Similar to *Longoria*, the deputies were not facing an *immediate* threat. *Longoria*, 873 F.3d at 705.

### C. There are genuine issues of material fact as to whether Deputy Roach's continued striking Mr. Honeycutt after other deputies arrive is reasonable

Deputy Roach's punching at Mr. Honeycutt is a use of force subject to the three-part analysis under *Graham*. Punches that are "capable of inflicting significant pain and causing serious injury" are "intermediate force." *Young v. Cnty of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011). The same three-part analysis applies as above. *Graham*, 490 U.S. at 396. Similarly as above, the most important part of the inquiry is whether Deputy Roach was in immediate danger. *Longoria*, 873 F.3d at 705.

In this case, similar to the deadly force used by Bento, there are genuine issues of material fact that make summary judgment inappropriate for Deputy Roach. The video shows that once Deputy Tharp arrives and controls Mr. Honeycutt's right side, Deputy Roach continues to strike Mr. Honeycutt. ER-71 [Tharp Rear Car Video 1:25]. It is a question of fact whether Deputy Roach was in immediate danger as he continued to punch a prone Mr. Honeycutt with Tharp also assisting in keeping Mr. Honeycutt immobile.

There is also a factual dispute about whether Mr. Honeycutt was holding a gun at this time. ER-51. The District Court states that "[t]here is no dispute that Honeycutt was holding a gun around this time." ER-51. However, that is not

verified by the video that Mr. Honeycutt was holding a gun, and the blows occur 5 seconds before anyone notices a gun. ER-71 [Tharp Rear Car Video 1:21-1:26]. Given that no one sees a gun, it is a genuine issue of material fact as to whether Deputy Roach was in immediate danger.

This Court should reverse the District Court's grant of summary judgment on this issue. The District Court should not have made credibility determinations on deposition testimony. *Anderson*, 477 U.S. at 255 (1986). Instead, the District Court, should leave a genuine issue as to whether Deputy Roach was in immediate danger to the jury. *Anderson*, 477 U.S. at 255 (1986).

## III. SHOOTING AN IMMOBILIZED PERSON IS A WELL-KNOWN VIOLATION OF CONSTITUTIONAL RIGHTS SUCH THAT QUALIFIED IMMUNITY DOES NOT ATTACH

The District Court did not reach qualified immunity below because the Court did not find a violation of Mr. Honeycutt's constitutional rights. However, Appellant asks this Court to also deny qualified immunity. Like *Longoria*, this case is a "pure question of fact and not a question of law or of mixed fact and law." *Longoria*, 873 F.3d at 710. In this case the question is whether Deputy Roach or Deputy Bento was in immediate danger; an inherently factual determination.

If neither deputy was in danger, then their use of excessive force is clearly unlawful. This Court and other Circuits have all ruled that continuing to apply

force to an immobilized individual is a clear violation of that individual's constitutional rights. *Davis*, 478 F.3d at 1052 (officer who continued to punch victim who was prone on the ground with the officer on top of him was clearly violating constitutional rights); *Wate v. Kubler*, 839 F.3d 1012 (11th Cir. 2016) (Finding excessive force when officers continued to taze a resisting person after he was immobilized); *Estate v. City of Martinsburg*, 961 F.3d 661 (4th Cir. 2020) (No qualified immunity for officers for shooting an individual who was pinned to the ground by five officers despite not being in handcuffs because suspect was secured an unable to create an immediate threat).

The question of whether either deputy was in immediate danger is a question for the jury. This case, like others "turn on a jury's credibility determination." *Davis*, 478 F.3d at 1055 (quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)). Because of the facts of this case, this matter cannot be decided as a matter of law and instead must have "a jury to sift through disputed factual contentions, and to draw inferences therefrom." *Id.* If the jury finds that both Deputy Roach and Deputy Bento used excessive force, then the fact that they continued to use excessive force on a secured and immobilized person is clearly unlawful.

## IV. ALL STATE LAW CLAIMS SHOULD BE REINSTATED BECAUSE SUMMARY JUDGMENT WAS IMPROPERLY GRANTED.

The District Court also granted summary judgment against Appellant's state law claims. The District Court noted that the state law claims rise and fall with the federal excessive force claims. ER-56 . Because the District Court improperly granted summary judgment on Appellants' federal excessive force claims, then the District Court's granting of summary judgment on Appellant's state law claims should also be reversed.

## CONCLUSION

For the foregoing reasons, Appellant request this Court to REVERSE the District Court's grant of summary judgment, DENY qualified immunity claims to Appellees and REVERSE the District Court's grant of summary judgment on Appellant's state law claims.

Date: September 25, 2025

Lafky & Lafky

*/s/ Kevin T. Lafky*
Kevin T. Lafky, OSB#852633
klafky@lafky.com
Lafky & Lafky
429 Court St NE
Salem, OR 97301
*Attorneys for Appellant Daniel Honeycutt*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number No. 25-2259**

The undersigned attorney or self-represented party states the following:

[ X ] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** _s/ Kevin T. Lafky_____ **Date 9-25-25**

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Certificate of Compliance for Briefs**

**9th Cir. Case Number No. 25-2259**

I am the attorney for Plaintiff-Appellant

**This brief contains 5915 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _s/ Kevin T. Lafky_____ **Date 9-25-25**

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2025, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Date: September 25, 2025.

/s Kevin T. Lafky
Kevin T. Lafky, OSB #852633
LAFKY & LAFKY
429 Court St NE
Salem, OR 97301
Attorney for Appellant